OPINION
{¶ 1} The appellant-defendant, Theresa L. Scott, appeals the judgments and sentence of the Tiffin Municipal Court.
 {¶ 2} On January 9, 2004, Scott was leaving her friend's house when she noticed that her car door was ajar and some personal items, including her purse, were missing from her vehicle. She immediately informed the Tiffin Police Department of the incident, and Officer Shawn Valley responded to the scene to fill out a report.
 {¶ 3} Approximately two hours later, Officer David Horn found a purse that matched the description of Scott's stolen purse in an alley approximately one and one-half mile from where Scott reported it stolen. Accordingly, Officer Horn contacted Officer Valley, and Officer Valley arrived at the scene. When Officer Valley arrived, he picked up the purse and opened it to conduct a "visual inventory" to determine if it was Scott's purse. While looking through the purse, Officer Valley noticed a small heart shaped container. In the container, Officer Valley discovered marijuana roaches and paper.[1]
 {¶ 4} Officer Valley contacted Scott to come to the police station in order to identify her purse, and Scott voluntarily complied. At the police station, Officer Valley led Scott to the statement room, which is located next to the main lobby. When they entered the room, Officer Valley shut the door and instructed Scott to inventory her purse to determine if anything was missing. Scott informed Officer Valley that two medication containers were missing, but Scott never mentioned the heart shaped container. Officer Valley asked Scott about the marijuana and paraphernalia in the container, and Scott initially stated that she did not know who owned the container. After approximately ten to twenty minutes of questioning, however, she confessed that the container, the marijuana, and the paraphernalia belonged to her.
 {¶ 5} Scott was cited for possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) and possession of marijuana in violation of R.C. 2925.11(A). She filed a motion to suppress the statements she made to Officer Valley in the statement room at the police station, but her motion was denied. Following a jury trial, Scott was found guilty of both offenses. It is from these events that Scott appeals alleging three assignments of error. The second and third assignments of error will be consolidated.
 First Assignment of Error The trial court erred in failing to suppress statementsmade by theappellant during a custodial interrogation in violation of thefifth amendment of the united states constitution.
In Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, the United States Supreme Court opined:
Our holding will be spelled out with some specificity in the pageswhich follow but briefly stated it is this: the prosecution may not usestatements, whether exculpatory or inculpatory, stemming from custodialinterrogation of the defendant unless it demonstrates the use ofprocedural safeguards effective to secure the privilege againstself-incrimination. By custodial interrogation, we mean questioninginitiated by law enforcement officers after a person has been taken intocustody or otherwise deprived of his freedom of action in any significantway.
While the totality of the circumstances will determine whether a suspect is in custody for Miranda purposes, "the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v.Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517 citing Oregon v.Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711. The Court elaborated:
Such a noncustodial situation is not converted to one in which Mirandaapplies simply because a reviewing court concludes that, even in theabsence of any formal arrest or restraint on freedom of movement, thequestioning took place in a "coercive environment." Any interview of onesuspected of a crime by a police officer will have coercive aspects toit, simply by virtue of the fact that the police officer is part of a lawenforcement system which may ultimately cause the suspect to be chargedwith a crime. But police officers are not required to administer Mirandawarnings to everyone whom they question. Nor is the requirement ofwarnings to be imposed simply because the questioning takes place in thestation house, or because the questioned person is one whom the policesuspect. Miranda warnings are required only where there has been such arestriction on a person's freedom as to render him "in custody."
 Mathiason, supra at 495.
 {¶ 6} In the case sub judice, Scott argues that when she entered the statement room at the police station, she was in custody and, therefore, subject to the rules and guidelines established by Miranda and its progeny. Moreover, Scott contends that because she was not read herMiranda rights before she was questioned by Officer Valley, then all of her statements were illegally obtained in violation of theFifth Amendment of the United States Constitution.
 {¶ 7} In its judgment entry denying Scott's motion to suppress, the trial court found the following facts to be true:
In the instant case the defendant was not called to the police stationas a rouse, as defense counsel wishes the Court to believe, but rather inresponse to defendant's call requesting assistance with her stolenpurse. The defendant came voluntarily to the station and met with theofficers in room in the outer lobby area which is not restricted to thepublic by locked doors or gates, alarms, etc. The defendant was free to goduring the discussion and was never told that she was not free to leave.Therefore, given the totality of the circumstances, this court does notfind that the defendant was in custody. Additionally, the Court does notbelieve that merely because the police officer's report states that thedefendant was released (it does not state released from custody asalleged by defense counsel) that she was in fact in custody.
Judgment Entry Denying Defendant's Motion to Suppress at p. 2.
 {¶ 8} As an appellate court, we do not disturb a trial court's findings of fact unless those findings are against the weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. After reviewing the record, we conclude that the trial court's factual findings are not against the weight of the evidence. As a result, Scott's voluntary appearance at the police station coupled with the fact that she was free to leave at anytime while she was questioned in the statement room does not trigger Miranda protection in this particular instance. SeeMathiason, supra at 495. At no time was Scott "in custody" or was she deprived of her freedom of movement. Accordingly, the first assignment of error is overruled.
 Second and Third Assignments of Error The evidence presented at trial was insufficient to sustain a verdictof guilty on the charges.
 The finding of guilty was against the manifest weight of the evidence.
 {¶ 9} R.C. 2925.14(C)(1) states that "[n]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." Similarly, R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Within the statutory framework of the two sections of the Ohio Revised Code cited, possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).
 {¶ 10} Possession may be constructive or actual. State v. Wolery
(1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. In order to prove constructive possession, the evidence must demonstrate that the defendant was able to exercise dominion or control over the object, even though the object may not be within his immediate physical possession. Id.
 {¶ 11} In State v. Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial and determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In contrast, when reviewing whether a verdict is against the manifest weight of the evidence, this Court must review the entire record, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 12} In the instant case, Scott argues that because her purse was stolen and out of her immediate control for approximately two hours, the State failed to provide sufficient evidence to prove "possession" beyond a reasonable doubt. Moreover, Scott contends that the finding her guilty of both offenses is against the manifest weight of the evidence.
 {¶ 13} First, after reviewing the evidence in a light most favorable to the State, we conclude that there is sufficient evidence to prove that Scott "possessed" both marijuana and paraphernalia. While it may be true that Scott's purse was out of her actual possession for approximately two hours, the purse was found zipped in an alley. Furthermore, and perhaps most importantly, Scott identified and laid claim to the heart shaped container and its contents — i.e. marijuana roaches and paper — because she admitted she used the drugs for medical reasons. As a result, the little amount of time her purse was missing, the fact that drugs were found in her purse, and her admission that the drugs and paraphernalia belonged to her is sufficient evidence to prove beyond a reasonable doubt the "possession" elements required by both R.C. 2925.14(C)(1) and R.C.2925.11(A). Additionally, based on a similar analysis, we conclude that the jury did not lose its way or create a miscarriage of justice by finding Scott guilty on both counts. Accordingly, the second and third assignments of error are overruled.
Judgments Affirmed.
 Cupp, P.J., and Rogers, J., concur.
[1] The record does not indicate whether Officer Valley opened the container to see its contents or whether the container was transparent.